OPINION OF THE COURT
Patricia P. Satterfield, J.
Plaintiff, Albert Quaedvlieg (plaintiff), commenced this action for divorce against defendant, Gloria Quaedvlieg (defendant), on the grounds of abandonment, constructive abandonment and cruel and inhuman treatment.[1] The trial of this action was held on December 11, 1998, April 9 and May 24, 1999.
Relevant Facts
This is the second action for divorce commenced between the parties, who were married for the first time on May 22, 1965, and divorced in March 1969. The parties remarried on March 8, 1975, and reside in Queens County, New York. There are no *88 children born of either of the parties’ marriages. Defendant is an Oneida Indian, born on an Indian reservation in Oswego, Ontario, Canada, where her surviving family continues to reside.
The parties spent considerable time visiting defendant’s family in Canada, especially during holiday periods. In March 1992, Mrs. Green was diagnosed as having Alzheimer’s disease. In June 1992, defendant, while visiting in Canada with her gravely ill aunt, became aware that her mother’s condition had deteriorated to the point that she required around-the-clock supervision and care. Mrs. Green was living in squalor, eating spoiled food, exhibiting signs of dementia, and repeatedly making frantic telephone calls to the police complaining of events that never transpired. Mrs. Green was in need of 24-hour care; only four hours could be provided at the reservation. Defendant placed her mother on a waiting list for admission to a nursing home on the Indian reservation; however, a space did not become available until 1997.[2] From 1992 to 1997, defendant was her mother’s primary caretaker in Canada.
This action was filed August 30, 1995; defendant was served with the summons and complaint on November 25, 1995. At issue is whether defendant’s extended absences from the marital residence to care for her mother in Canada constitute abandonment.
The Divorce
A. Abandonment
Plaintiff seeks a divorce on the ground of abandonment. Section 170 (2) of the Domestic Relations Law provides that an action for a divorce may be maintained on the ground of abandonment where one party has been away from the marital residence for a period of one or more years. To establish a cause of action on the ground of actual abandonment, the plaintiff must prove, by a preponderance of the credible evidence, that the absence was an unjustified voluntary separation for a period of one or more years, with the intention of the departing spouse not to return, and without the consent of the abandoned spouse. (Bazant v Bazant, 80 AD2d 310; Schine v Schine, 31 NY2d 113, 119; see also, Wallin v Wallin, 233 AD2d 699.) The “evidence must show a ‘hardening of resolve’ by one spouse not to live with the other.” (Hage v Hage, 112 AD2d *89 659, 661; see, Phillips v Phillips, 70 AD2d 30, 37-38.) As was set forth in plaintiffs posttrial memorandum of law: “Temporary absence is not abandonment. The absence must be coupled with intent not to return.” (Silherstein v Silberstein, 218 NY 525.) Here, the evidence adduced at the trial was insufficient to establish, as claimed by plaintiff, that defendant abandoned him on June 8, 1992. Indeed, to the contrary, the evidence conclusively rebutted each of the elements needed to establish the cause of action.
First, the evidence established that defendant’s intermittent separation from plaintiff, though voluntary, was justified. Plaintiff testified that defendant performed all the duties of a faithful wife until 1991, when during the parties’ visit at Christmas 1991, it became apparent that defendant’s mother, Minnie Green, was acting “peculiarly,” and exhibited signs of paranoia. The testimony further established that defendant’s mother was incapable of caring for herself and that there were no relatives to care for her, other than a nephew and defendant, her only child. The testimony of both parties established that defendant constantly was torn between her devotion and obligations to her mother and her duties as a wife.
The evidence further established that the parties discussed the two alternatives available to provide the type of care defendant’s mother needed: (1) moving defendant’s mother to New York, which would have resulted in her loss of the medical benefits provided by the Tribe, or (2) keeping defendant’s mother on the reservation, where only four hours of in-home care was available. Plaintiff testified that defendant’s mother refused to move to New York and that her doctor opined that “she’s a full blooded Indian. She’d be lost in New York and would not — most likely she will get worse faster.” Plaintiff, in fact, recognized defendant’s dilemma and initially supported her staying in Canada to care for her mother. In an attempt to fulfill her obligations to plaintiff and to her mother, the testimony established that defendant, either alone or with her mother,[3] returned to New York several times a year, during which times she often entertained plaintiffs family visiting from Europe, prepared and froze plaintiffs meals for his consumption while she was in Canada, went out to dinner and *90 to movies with plaintiff, and generally socialized with him. Based upon the facts and circumstances, defendant’s travel to and remaining in Canada to care for her mother was justified.
Moreover, the evidence showed that plaintiff’s conduct signaled his acquiescence in the arrangement. Plaintiff also visited in Canada with defendant and her family several times a year, and, in 1993, built, together with defendant and her mother, a home on the Indian reservation to which they had planned to relocate and make their home upon plaintiffs retirement in 1997. Although the parties and defendant’s mother shared equally in the cost of building the home, defendant and her mother held title to the property; only Indians can own land on the Indian reservation. The parties additionally were in almost daily telephone contact. The frequency of defendant’s return to New York and the extent of plaintiffs involvement with defendant and her mother both in Canada and New York belie plaintiffs present claim that defendant’s absence from the marital residence was unjustified, without his consent and telegraphed her intention of never returning to the marital residence to fulfill her duties as his wife.[4]
*91 This case presents one of the difficult situations that couples fortunate enough to have loving extended families must confront when a member of that family needs the care and assistance of a spouse. Defendant was confronted with a Hobson’s choice: caring for her mother or remaining in New York with plaintiff, her husband. Plaintiff conceded that he understood and acknowledged defendant’s duty to care for her mother; he simply wearied of having to share defendant with her mother, whose special needs preoccupied a substantial amount of defendant’s time. No evidence, however, was presented from which it could even be inferred, on defendant’s part, a “hardening of resolve” or any decision, irrevocable or otherwise, that she did not want to live with plaintiff.[5] (See, Phillips v Phillips, 70 AD2d 30, supra.) It is the holding of this court that defendant’s temporary and intermittent absences from the marital residence, even for protracted periods, did not constitute abandonment. (See also, Hage v Hage, 112 AD2d 659, supra.) Accordingly, plaintiffs cause of action for a divorce on the ground of abandonment is dismissed.
B. Constructive Abandonment
Nor did the evidence support a cause of action for constructive abandonment, which resulted in the dismissal of this cause of action during the trial. It is well settled that “to establish a cause of action for a divorce on the ground of constructive abandonment, the spouse who claims to have been constructively abandoned must prove that the abandoning spouse unjustifiably refused to fulfill the basic obligations arising from the marriage contract and that the abandonment continued for at least one year.” (Lyons v Lyons, 187 AD2d 415, 416 [2d Dept 1992].) Constructive abandonment occurs when a spouse refuses to engage in sexual relations for one or more years and such a refusal is “ ‘unjustified, willful, and continued, despite repeated requests from the other spouse for resumption *92 of cohabitation.’ ” (Caprise v Caprise, 143 AD2d 968, 970, quoting Scheinkman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C170:7, at 608.) “ ‘A refusal or failure to engage in marital relations, to rise to the level of constructive abandonment, must be unjustified, willful, and continued, despite repeated requests from the other spouse for resumption of cohabitation.’ ” (Supra, at 970, quoting Scheinkman, op. cit., at 608.)
Here, the testimony was that the parties shared the same bedroom when together until just before this action was commenced, at which time plaintiff vacated the marital bedroom. At trial, the testimony as to whether the parties engaged in conjugal relations during the times they shared the marital bed was contradictory. The contradictions in each party’s testimony raised an issue of credibility, which this court resolves in favor of defendant. (See, Schottenfeld v Schottenfeld, 152 AD2d 690.) The court finds that plaintiffs testimony was legally insufficient to establish either that defendant unjustifiably refused to fulfill the basic obligations arising from the marriage contract or that there was any abandonment that continued for at least one year prior to the commencement of this action. (See, Domestic Relations Law § 170 [2]; Schildkraut v Schildkraut, 223 AD2d 585; Lyons v Lyons, 187 AD2d 415, supra; Caprise v Caprise, 143 AD2d 968, supra.) Accordingly, that cause of action also is dismissed.
C. Cruel and Inhuman Treatment
During the trial, this court also dismissed plaintiffs cause of action for a divorce on the ground of cruel and inhuman treatment. The evidence was insufficient to sustain a grant of a divorce on the ground of cruel and inhuman treatment. (See, Brady v Brady, 64 NY2d 339; Tissot v Tissot, 243 AD2d 462; Arunas v Arunas, 227 AD2d 424; Palin v Palin, 213 AD2d 707; Donley v Donley, 233 AD2d 930; Doyle v Doyle, 214 AD2d 918; Meier v Meier, 156 AD2d 348; Del Gatto v Del Gatto, 142 AD2d 545.) A party seeking a divorce on the ground of cruel and inhuman treatment must show serious misconduct, not merely incompatibility or that the marriage is “dead.” (Brady v Brady, 64 NY2d 339, 346 [1985]; Martin v Martin, 224 AD2d 597; Hirschhorn v Hirschhorn, 194 AD2d 768; Sanford v Sanford, 176 AD2d 932; Domestic Relations Law § 170 [1].) The conduct complained of must constitute calculated cruelty so as to render cohabitation unsafe or improper. (See, Feeney v Feeney, 241 *93 AD2d 510.) Whether conduct constitutes cruel and inhuman treatment depends, in part, on the “length of the parties’ marriage, because what might be considered substantial misconduct in the context of a marriage of short duration, might only be ‘transient discord’ in that of a long-term marriage [for which] courts in this State have required a high degree of proof of cruel and inhuman treatment.” (Brady v Brady, supra, at 344.)
Other than plaintiffs testimony relating to defendant’s absence from the marital home, there was not one scintilla of evidence even tending to show that defendant engaged in any conduct subject to a description of cruel or inhuman. The act simply does not rise to the level of serious misconduct that would support a grant of divorce on the ground of cruel and inhuman treatment. Plaintiff has wholly failed to meet his burden of proof; a plaintiff seeking a divorce on the ground of cruel and inhuman treatment “must show serious misconduct, and not mere incompatibility.” (Brady v Brady, supra, at 343; Feeney v Feeney, 241 AD2d 510 [2d Dept 1997], supra; Hirschhorn v Hirschhorn, 194 AD2d 768 [2d Dept 1993], supra.) This cause of action must be dismissed.

. Plaintiffs causes of action based upon cruel and inhuman treatment and constructive abandonment were dismissed at trial.

. Defendant’s mother died in April 1999, during the trial of this action.

. Beginning in 1994, defendant was able to arrange for short-term care for her mother in the Iroquois Respite House, a facility where an ill family member may stay for a short time to relieve the caretaker. During such times, defendant traveled to New York alone or the parties vacationed together alone.

. The testimony established that from June 26 to July 4, 1992, plaintiff went to Canada to visit the defendant and her mother; that in September 1992, plaintiff drove to Canada for an eight-day visit and returned to New York with defendant and her mother, during which time the parties entertained plaintiff’s family from Belgium; that for Thanksgiving 1992, defendant traveled to New York with her mother and remained for one week; that for Christmas 1992, plaintiff traveled to Canada for two weeks; that in April 1993, defendant and her mother returned to New York for two weeks to celebrate defendant’s birthday with plaintiff; that from May 1 to May 21, 1993, defendant and her mother came to New York, and the parties together with defendant’s mother traveled to Belgium to visit plaintiff’s relatives; that in June and July 1993, plaintiff visited defendant in Canada and reviewed plans for the house to be built; that in November 1993, plaintiff returned to Canada to move defendant’s mother’s belongings into the new house and plaintiff remained for a visit; that for Christmas 1993, plaintiff spent the holidays in Canada with defendant and her mother; that from March 30 to April 12, 1994, defendant and her mother visited with plaintiff in New York; that in June 1994, defendant and her mother again traveled to New York; that in September 1994, the parties vacationed alone, made possible by defendant’s mother being able to stay at the Respite House; that in November 1994, defendant and her mother returned to New York for two weeks; that in December 1994, plaintiff spent the Christmas holidays in Canada with defendant and her mother; that from March 8 through 18, 1995, defendant and her mother came to New York; that in April 1995, defendant came to New York without her mother, who remained in the Respite House, and entertained plaintiff’s relatives from Belgium; that in July 1995, defendant returned to New York to celebrate plaintiff’s birthday; that from August 25 through September 2, 1995, defendant came to New York alone to visit *91 plaintiff; that from November 13 through 26, 1995, defendant returned to New York to visit plaintiff, who had departed to Canada to see defendant’s mother, and was served, while in New York, with the summons; that for Christmas 1995, defendant returned to New York; and that the parties continued to see each other throughout 1996, and that, beginning in 1997, when defendant’s mother was admitted to the nursing home in Canada, defendant divided her time equally between New York and Canada.

. Defendant’s passport, driver’s license, library card, checking statements, IRA and other investment statements list the marital home in Sunnyside, New York, as her legal residence. The lease for the marital apartment was renewed in 1994 in the name of both parties, less than one year prior to the commencement of this action.